

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DANNY GONZALEZ, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | 4:12-CV-00641-A |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| DEFENDANT. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I.   STATEMENT OF THE CASE

Plaintiff Danny Gonzalez ("Gonzalez") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying his claim for supplemental security income ("SSI")

under Title XVI of the Social Security Act ("SSA"). On January 20, 2010, Gonzalez

protectively applied for SSI benefits alleging that he became disabled on January 20, 2010.

1

(Transcript ("Tr.") 11; *see* Tr. 140-43.) [1]   His application was denied initially and on reconsideration. (Tr. 11, 69-73, 86-89.) The ALJ held a hearing on March 9, 2011 and issued a decision on April 5, 2011 that Gonzalez was not disabled. (Tr. 11-20, 25-61.) Gonzalez filed a written request for review of the ALJ's decision, and the Appeals Council denied the request on June 13, 2012, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-7.)

## II.   STANDARD OF REVIEW

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA.   In addition, numerous regulatory provisions govern SSI benefits. *See* 20 C.F.R. Pt. 416. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.   42 U.S.C. § 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).   To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.  20 C.F.R. § 416.920.

First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit.  20 C.F.R. § 416.972.  Second, the claimant must have an

---

[1] Gonzalez originally also filed a claim for a period of disability and disability insurance benefits pursuant to Title II. However, at the July 9, 2008 hearing before the ALJ, Gonzalez moved to withdraw his Title II claim and the ALJ granted Gonzalez's request. (Tr. 11.) Thus, the Court will not consider such claim.

In addition, Gonzalez originally claimed that his onset date of disability was March 1, 2002. However, at the hearing, the ALJ amended Gonzalez's alleged onset date of disability to January 20, 2010 because "SSI benefits are not payable prior to the claimant's protective filing date regardless of when disability may have actually began." (Tr. 11.)

impairment or combination of impairments that is severe.  An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work.  20 C.F.R. § 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).  Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1.  20 C.F.R. § 416.920(d).  Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work.  *Id.* § 416.920(e).  And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experience.  *Id.* § 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled.  *Crowley*, 197 F.3d at 198.  If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments.  *Id.*  If the Commissioner meets this burden, the claimant must then prove that he cannot, in fact, perform the work suggested.  *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*,

837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## III.   ISSUES

In his brief, Gonzalez presents the following issues:

1. Whether the ALJ's residual functional capacity ("RFC") determination is supported by substantial evidence; and

2. Whether the ALJ erred by rejecting the opinions of Gonzalez's treating physicians in favor of the opinions of the non-examining medical consultants.

(Plaintiff's Brief ("Pl.'s Br.") at 1, 9-15.)

## IV.   ALJ DECISION

In his April 5, 2011 decision, the ALJ found that Gonzalez had not engaged in any substantial gainful activity since January 20, 2010, the alleged date of Gonzalez's onset of his disability. (Tr. 13.) The ALJ further found that Gonzalez suffered from the following severe impairments: "right brachial plexopathy and atrophy of the right shoulder, right elbow degenerative joint disease (status-post healed fracture), left wrist degenerative joint disease, mild degenerative joint disease of the right knee, and degenerative disc disease of the cervical spine."

(Tr. 13.)   Next, the ALJ held that none of Gonzalez's impairments, or combination of impairments, met or equaled the severity of any impairments in the Listing. (Tr. at 14.)  As to Gonzalez's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work[2] as defined in 20 CFR 416.927(b) except he can occasionally perform reaching, handling, and fingering with his right upper extremity, and he can occasionally climb stairs.  He cannot climb ladders, ropes, or scaffolds.  He is limited to simple job tasks (due to his alleged pain and medication side effects).

(Tr. 14 (emphasis omitted) (footnote added).)  Next, the ALJ found that Gonzalez was unable to perform any of his past relevant work.   (Tr. 19.)   However, considering Gonzalez's age, education, work experience, and RFC, the ALJ concluded, based upon the vocational expert's opinion that there were jobs that existed in significant numbers in the national economy, that Gonzalez was not disabled. (Tr. 19-20.)

## V.   DISCUSSION

### A.  RFC Determination

Gonzalez argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not include any limitations relating to Gonzalez's left wrist in the RFC determination.   (Pl.'s Br. at 1.)   Specifically, Gonzalez argues that the RFC "failed to

---

[2] Pursuant to the regulations, light work is defined as follows:

Light Work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b).

include any limitations associated with Gonzalez's left wrist degenerative disease and the ALJ did not make any findings to explain why such limitations were excluded from his RFC assessment when the impairment was found to be severe at step two." (Pl.'s Br. at 11; Plaintiff's Reply ("Pl.'s Reply") at 1-4.)

RFC is what an individual can still do despite his limitations.[3]  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2.  RFC is not the least an individual can do but the most.  *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[4] factors to be considered, and is based upon all of the relevant evidence in the case record.  *Id.* at 3-6.  The responsibility for determining a claimant's RFC lies with the ALJ.  *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).  The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence.  SSR 96-8p, 1996 WL 374184, at *7.

---

[3] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC.  *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005).  The Commissioner assesses the RFC before proceeding from step three to step four.  *Id.*

[4] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling."  SSR 96-8p, 1996 WL 374184, at *5.  Each function must be considered separately, but the final RFC assessment may combine activities.  *Id.*  Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations.  *Id.* at *6.

6

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 416.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *Id.* The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7C, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (superseded only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.") In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

In this case, the ALJ ultimately determined that Gonzalez was not disabled because there were a significant number of jobs in the national economy that Gonzalez could perform. (Tr. 19-20.) Before coming to this conclusion, the ALJ found at Step Two, as stated above, that Gonzalez suffered from several severe impairments, including left wrist degenerative joint disease. (Tr. 13.) As to Gonzalez's RFC, the ALJ found, based on all the evidence in the record,

that Gonzalez could perform light work except that he could occasionally perform reaching, handling, and fingering with his right upper extremity and could occasionally climb stairs. (Tr. 14.) In addition, the ALJ held that Gonzalez cannot climb ladders, ropes, or scaffolds, and was limited to simple job tasks. (Tr. 14.)

As to Gonzalez's left wrist degenerative joint disease, the ALJ considered, *inter alia*, the following evidence: (1) Gonzalez's testimony that: (a) he can lift a gallon of milk with his left hand, but it is painful and swollen afterwards, (b) he is unable to move his left arm above his elbow, (c) he primarily used his right hand when he was working, and (d) he is able to drive himself to the grocery store, do some sweeping, do some cleaning, wash the dishes, and do his laundry with one arm (Tr. 15); (2) a May 25, 2010 visit to Palo Pinto General Hospital ("Palo Pinto"),[5] in which Gonzalez complained of continuing pain and swelling in his left hand (Tr. 17; *see* Tr. 313-16); (3) a June 1, 2010 examination in which Dr. Eric Brock, M.D. ("Dr. Brock") noted, *inter alia*, that, although Gonzalez had angular deformity and mild swelling in his left hand and complained of tenderness, Gonzalez had full range of motion and strength in his left hand and wrist (Tr. 17; *see* Tr. 267-70); (4) x-rays of the claimant's left hand showing evidence of mild degenerative joint disease throughout the carpus and the presence of healed fractures, "one of which healed in a mal-united fracture at the 2nd metacarpal" (Tr. 17; *see* 269).

In addition, in making his RFC determination, the ALJ also considered, *inter alia*, the following evidence: (1) examination notes from Palo Pinto dated August 31, 2010 in which Gonzalez requested medication refills and voiced no complaints and the attending staff noted

---

[5] The Court notes that Sat Gupta, D.O. ("Dr. Gupta") is usually listed as the attending physician on the examination notes at Palo Pinto.

Gonzalez's physical examination, including motor strength, was normal with no evidence of edema in the extremities (Tr. 17; *see* Tr. 310-11); (2) examination notes from Palo Pinto dated November 23, 2010 in which the attending staff noted: (a) Gonzalez was complaining of pain, (b) Gonzalez had a history of noncompliance with medical care, and (c) Gonzalez's physical examination was normal (Tr. 17; *see* Tr. 303-06); (3) examination notes from Palo Pinto dated February 2011 in which the attending staff noted that Gonzalez's examination was normal (Tr. 18; *see* Tr. 291-92, 295-96; (4) a June 6, 2008 Physical Residual Functional Capacity Assessment ("PRFC") in which State Agency Medical Consultant ("SAMC") John Wiley, M.D. ("SAMC Wiley") diagnosed Gonzalez with, *inter alia*, paralysis in the right upper arm and elbow and opined that Gonzalez: (a) could lift and/or carry up to twenty pounds occasionally and ten pounds frequently, (b) could sit, stand and/or walk about six hours in an eight-hour workday, (c) had the unlimited ability to push and/or pull, (d) had "full range of motion on left" but "right radial paresthesia with numbness in one finger,"[6] (e) could only occasionally climb ladders, ropes, or scaffolds, and (f) could never reach with his right arm but had no limitation with handling or fingering (Tr. 18, 221-28); (5) a PRFC dated March 17, 2010 in which SAMC Laurence Ligon, M.D. ("SAMC Ligon"), diagnosed Gonzalez with right brachial plexopathy[7] and diabetes and opined that Gonzalez: (a) could lift and/or carry up to twenty pounds occasionally and up to ten pounds frequently, (b) could sit, stand, and/or walk about six hours in

---

[6] SAMC Wiley also stated that Gonzalez was able to use a pen to write with his right hand but that his right arm was "flaccide from shoulder ot [sic] elbow" and he was not able to fully rotate the right arm. (Tr. 223.)

[7] Brachial plexopathy is any neuropathy of the network of lymphatic vessels, nerves, or veins of or pertaining to the upper limb. Dorland's Illustrated Medical Dictionary 247, 1483 (31st ed. 2007)

an eight-hour work day, (c) had the unlimited ability to push and or pull, (d) could never climb ladders, ropes, or scaffolds and occasionally climb ramps and stairs and balance, and (e) was limited to the occasional ability to reach in all directions and in handling or gross manipulation with the right extremity (Tr. 18, 259-66);[8] and (6) a July 8, 2010 PRFC in which SAMC Kim Rowlands, M.D. ("SAMC Rowlands") diagnosed Gonzalez with right brachial plexopathy and left wrist and right knee degenerative joint disease and opined, *inter alia*, that Gonzalez: (a) could lift and/or carry up to twenty pounds occasionally and ten pounds frequently, (b) sit, stand, and/or walk about six hours in and eight-hour work day, (c) had the unlimited ability to push and/or pull, (d) could never climb ladders, ropes, or scaffolds, and occasionally climb ramps and stairs and balance, and (e) was limited to the occasional ability to reach in all directions and handle items on the right due to reduced range of motion in the right shoulder and elbow (Tr. 18, 278-85).

As to Gonzalez's claim that it was inconsistent for the ALJ to find at Step Two that he had the severe impairment of left wrist degenerative joint disease and then not include any limitations in the RFC to account for such impairment, the Court notes that "having a severe impairment is not a sufficient condition for receiving benefits under the Secretary's regulations," but "means only that claimant has passed the second step of the inquiry mandated by the

---

[8] SAMC Ligon further stated:

This claimant is noted to have [history] of [motor vehicle accident] back in 1978 and sustained a right brachial plexopathy which has resulted in muscle wasting in the right arm and shoulder. No other significant problems reported.

. . . Right UE shows muscle atrophy of shoulder and arm. There is reduced sensation of C5 and C6. He has reduced ROM of right elbow and shoulder.

(Tr. 264.)

regulations." *Shipley v. Sec. of Health & Human Servs.*, 812 F.2d 934, 935 (5th Cir. 1987). In other words, the consideration of whether a claimant's impairments are severe at Step Two is a different inquiry than an ALJ's assessment of the claimant's RFC. *See Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *9 (5th Cir. Aug. 19, 2005) ("A claimant is not entitled to social security disability benefits merely upon a showing that she has a severe disability. Rather, the disability must make it so the claimant cannot work to entitle the claimant to disability benefits."); *Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001) ("The ALJ's finding that [the claimant] had a 'combination of impairments that is severe' did not foreclose a finding that [the claimant] had a residual functional capacity to perform a range of light work, and is not necessarily inconsistent with that finding."); *Quigley v. Astrue*, No. 4:09-CV-402-A, 2010 WL 5557500, at *8 (N.D. Tex. Sept. 8, 2010).[9]

In this case, the ALJ, based on limited evidence in the record regarding Gonzalez's left wrist impairment, decided at Step Two to include such impairment as a severe impairment. (Tr. 13.) Although the ALJ did not set forth any specific limitations in the RFC determination relating to *only* his left wrist, the ALJ did find that Gonzalez could not climb ladders, ropes, or

---

[9]The Court notes that there are several cases that have found that the ALJ erred in failing to include any limitations in the RFC determination for impairments found to be severe at Step Two. For example, in *Norman v. Astrue*, No. SA-10-CA-849-XR, 2011 WL 2884894, at *5 (W.D. Tex. July 18, 2011), the court stated, "The ALJ's inexplicable omission of the [obstructive sleep apnea ("OSA")] from the RFC analysis in step 4 is contradicted by the determination of the OSA being 'severe' in step 2." In *Norman*, the Court focused on the fact that there was no medical evidence to support the conclusion that Norman's symptoms resulting from his severe OSA had completely disappeared with treatment. In addition, the Court noted that there was no medical testimony, opinion, or other evidence that contradicted the assertions by the claimant that his severe OSA limited his ability to sustain substantial gainful employment. *Id.* at 5. However, in this case, there is no medical evidence indicating that Gonzalez's left wrist degenerative joint disease limited his ability to sustain any and all gainful employment. Instead, the evidence shows, at the most, the following: (1) that Gonzalez's left wrist was, at times, swollen and caused him pain; (2) Gonzalez had been diagnosed with mild degenerative joint disease; and (3) Gonzalez could not use his left hand for fine manipulation. (*See, e.g.*, Tr. 267-70, 278, 318, 320-23.)

scaffolds. Such limitations do take into account Gonzalez's left wrist impairment. The ALJ is not required to include limitations in the RFC determination that are not supported by the evidence in the record.

Furthermore, there is substantial evidence in the record that supports the ALJ's RFC determination. Specifically, there is evidence that Dr. Brock, in the June 1, 2010 examination, noted that Gonzalez had full range of motion and strength in his left wrist and hand. (Tr. 269.) In addition, multiple examination notes from Palo Pinto in 2010 and 2011 indicated that Gonzalez's physical examinations were "normal." (See, e.g., Tr. 291-92, 295-96, 306-06, 310-11.) Furthermore, none of the SAMC opinions indicate that Gonzalez suffered from any restrictions due to, specifically, his left wrist or hand.[10] Because substantial evidence supports the ALJ's RFC determination, any error by the ALJ in failing to explain why he did not include any left-wrist limitations in the RFC determination is harmless. See Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007) (stating that ALJ's omission does not require remand unless it affected claimant's substantial rights); Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as the "substantial rights of a party have [not] been affected."). See also Owen v. Astrue, No. 3:10-CV-1439-BH, 2011 WL 588048, at *13 (N.D. Tex. Feb. 9, 2011); Ball v. Astrue, No. 1:06-CV-138-BI, 2008 WL 836418, at *17 (N.D. Tex. Mar. 26, 2008) (finding that the ALJ did not err in finding at Step Two that claimant's wrist fracture was severe and then not incorporating some specific limitations regarding the claimant's wrist fracture into the RFC determination). The ALJ's decision is not

---

[10] SAMC Rowlands was obviously aware that Gonzalez suffered from left wrist degenerative joint disease as she noted this diagnosis on the PRFC. (Tr. 278.) However, even with this diagnosis, SAMC Rowlands did not place any limitations on Gonzalez based on such an impairment.

12

subject to reversal, even if there may be substantial evidence in the record that would have supported the opposite conclusion, because substantial evidence also supports the conclusion that was reached by the ALJ. *See Dollins v. Astrue*, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) and *Steed v. Astrue*, 524 F.3d 872, 874 (8th Cir. 2008)).

Based on the specific facts in this case, it is clear that the ALJ discussed the evidence in the record in making his RFC determination, adequately explained the reasoning for such determination and for giving less weight to certain evidence, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his PRFC assessment that were most supported by the record. *See,* e.g., *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). Because there is substantial evidence in the record that supports the ALJ's RFC determination, the Court concludes that remand is not required as to this issue.

## B. Treating Physicians

Gonzalez also claims that the Appeals Council erred by rejecting the opinions of Gonzalez's treating physicians, Dr. Gupta and Dr. Brock, without explanation and without applying the factors set forth in 20 C.F.R. § 416.927(c).[11] (Pl.'s Br. at 12-15; Pl.'s Reply Br. at

---

[11] The regulations, rulings, and relevant case law reflect that the ALJ should weigh all of the medical source opinions and articulate the reasons underlying the decisions he has made. *See generally* 20 C.F.R. § 416.927(b), (d); *see also* SSR 96-6p; 1996 WL 374180, at *2 (S.S.A. July 2, 1996). While opinions on the ultimate issue of disability status are reserved to the ALJ, he must consider all medical opinions. 20 C.F.R. § 416.927(b), (d)(1). Controlling weight is assigned to the opinions of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20

13

4-9.)  After the ALJ issued his opinion on April 5, 2011, Gonzalez submitted the following

evidence to the Appeals Council: (1) a Medical Release/Physician's Statement dated August 17,

2011 in which Dr. Brock opined, *inter alia*, that Gonzalez: (a) suffered from a permanent

disability, (b) could do no pushing or pulling or lifting and carrying; and (c) could only keyboard

with his left hand (Tr. 318, 322); and (2) a Physician Statement dated December 20, 2011 in

which Dr. Gupta opined, *inter alia*, that Gonzalez: (a) could lift and carry ten pounds with his

left arm occasionally but not frequently and could not lift or carry any weight with his right arm,

(b) could sit, stand, and/or walk about two hours in an eight-hour work day, (c) could not

perform simple grasping, fine manipulation, or operate push and pull arm controls with his right

arm and could not perform fine manipulation with his left hand, (d) had partial paralysis in his

left arm, (e) could never squat, crawl, climb, or reach, (f) had severe limitations against

unprotected heights, being around moving machinery, and driving automotive equipment, and (f)

suffered from pain that was frequently debilitating (Tr. 320-21).  The Appeals Council, in its

---

C.F.R. § 416.927(c)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983).  However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Muse*, 925 F.2d at 790.  Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. § 416.927(d); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).\

     In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § [416.927]." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).  Under the statutory analysis of 20 C.F.R. § 416.927, the ALJ must evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 416.927(c); SSR 96-6p, 1996 WL 364180, at *3; SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).

June 13, 2012 Notice of Appeals Council Action, acknowledged that it had considered this additional evidence but "found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 2; *see* Tr. 1, 4-5.)

Social Security regulations allow claimants to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision to deny benefits. 20 C.F.R. §§ 404.970(b), 404.976(b); *see Rodriguez v. Barnhart*, 252 F. Supp. 2d 329, 331-32 (N.D. Tex. 2003). The Appeals Council is required to evaluate the entire record, including any new and material evidence submitted by the claimant. *Id.* The Appeals Council's decision to decline to grant review of an ALJ's decision is part of the "final decision" and, as such, is reviewable in federal court. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336-38 (5th Cir. 2005). In the Fifth Circuit, "evidence submitted by a claimant to the Appeals Council does not per se require remand to the Commissioner simply because the Appeals Council failed to address the evidence in its decision." *McGee v. Astrue*, No. 08-0831, 2009 WL 2841113, at *6 (W.D. La. Aug. 28, 2009) (citing *Higginbotham*, 405 F.3d at 332 and *Higginbotham v. Barnhart*, 163 F. App'x 279, 281-82 (5th Cir. 2006) ("*Higginbotham II*")). "A court considering the final decision should review the record as a whole, including the new evidence, to determine whether the Commissioner's findings are supported by substantial evidence, and should remand only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported." *Lee v. Astrue*, No. 3:10-CV-155-BH, 2010 WL 3001904, at *7 (N.D. Tex. July 31, 2010) (citing *Higginbotham II*, 163 F. App'x at 281-82).

Contrary to Gonzalez's argument, the Appeals Council did not err by failing to specifically discuss in detail its reasons for rejecting the newly submitted opinions of Drs. Brock and Gupta.  According to the Hearings, Appeals and Law Litigation Manual ("HALLEX"), the Appeals Council was at one time required to specifically address and assess the weight of any additional evidence and legal arguments submitted for review.  *See Newton*, 209 F.3d at 459 (citing HALLEX § I-3-5-1 ("In the denial notice, the Appeals Council will specifically address additional evidence or legal arguments or contentions submitted in connection with a request for review.")).  However, Fifth Circuit precedent states that the requirement in HALLEX requiring a detailed discussion of additional evidence was suspended by the Executive Director of the Office of Appellate Operations years ago, and there is no indication such suspension has been lifted. *See Higginbotham*, 405 F.3d at 335 n.1; *see also Frazier v. Colvin*, No. 12-1728, 2013 WL 4040061, at *6 (W.D. La. Aug. 7, 2013); *Lee*, 2010 WL 3001904, at *8 (citing *Higginbotham*, 405 F.3d at 335 n.1).  *Coleman v. Astrue*, No. 1:08-CV-230-SAA, 2010 WL 956175, at *6 (N.D. Miss. Mar. 11, 2010); *Walker v. Astrue*, No. 3:09-CV-1900-BH, 2010 WL 910505, at *9 (N.D. Tex. Mar. 13, 2001); *McGee v. Astrue*, No. 08-0831, 2009 WL 2841113, at *5 (W.D. La. Aug. 28, 2009).  Furthermore, as noted above, in the Fifth Circuit, evidence submitted by a claimant to the Appeals Council does not per se require remand to the Commissioner simply because the Appeals Council failed to address the evidence in its decision." *McGee*, 2009 WL 2841113, at *6.  Instead, the issue before the Court is whether "the new evidence diluted the record to such an extent that the ALJ's determination became insufficiently supported." *Lee*, 2010 WL 3001904, at *8.

16

In this case, even assuming that the newly submitted opinions of Drs. Brock and Gupta did conflict with some evidence in the record relied on by the ALJ, such opinions appear inconsistent with the treatment notes of such doctors that were already in the record and are not supported by any explanation or objective laboratory results. Furthermore, the Court has already found that there was substantial evidence to support the ALJ's RFC determination as such evidence contained specific opinions that Gonzalez was able to work at the RFC found by the ALJ.[12] *See Gonzalez v. Comm'r of Soc. Sec. Admin.*, No.  , 2012 WL 1058114, at *10-11 (N.D. Tex. Jan. 26, 2012) ("[A]lthough some of the limitations on Plaintiff's work-related activities [contained in the assessment submitted after the ALJ's decision] indicate a more substantial loss in [the claimant's] ability, this Court finds that those limitations do not dilute the record to such an extent that the ALJ's decision would become insufficiently supported."). As noted above, the ALJ's decision is not subject to reversal, even though there may be substantial evidence in the record that would have supported the opposite conclusion, because substantial evidence also supports the conclusion that was reached by the ALJ. *See Dollins v. Astrue*, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) and *Steed v. Astrue*, 524 F.3d 872, 874 (8th Cir. 2008)). Consequently, there was no error and remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

---

[12] *But see Lee v. Astrue*, No. 3:10-CV-155-BH, 2010 WL 3001904, at *8 (N.D. Tex. July 13, 2010) (finding that although ALJ's decision was initially supported by substantial evidence, the addition of a doctor's assessment to the record made the decision insufficiently supported because it provided a very detailed assessment regarding claimant's inability to work that had not previously existed in the record); *Stewart v. Astrue*, No. 7-07-CV-052-BD, 2008 WL 4290917, at *4 (N.D. Tex. Sept. 18, 2008).

## NOTICE OF RIGHT TO OBJECT TO PROPOSED
## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **September 25, 2013** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED September 11, 2013.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

19